█ THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v EDITH FERRERAS, Respondent. — Appeal by the People from an order of the Supreme Court, Queens County (O'Brien, J.), dated February 28, 1983, which, *sua sponte,* after a nonjury trial, set aside defendant's conviction of criminal possession of a controlled substance in the first degree on the ground that defendant had been denied her right to the effective assistance of counsel. ¶ Order reversed, on the law, verdict reinstated and matter remitted to the Supreme Court, Queens County, for sentencing. ¶ Indictment number 8062-82 charged defendant with the crime of criminal possession of a controlled substance in the first degree. On or about February 3, 1982, defendant allegedly possessed in excess of four ounces of cocaine. Defendant thereafter waived her right to a trial by jury and was ultimately tried before the Honorable Cornelius J. O'Brien. ¶ Following an incident in which her then husband was shot and wounded, defendant arrived at her friend's apartment carrying a metal box wrapped in a white plastic envelope. The parties stipulated at trial that the metal box contained 4 pounds, 2 ounces and 30 grains of cocaine. ¶ The police, meanwhile, had arrived at defendant's apartment in response to a radio run regarding a possible homicide. Defendant's brother-in-law, Carlos Ferreras, gave the police the keys to the apartment whereupon they entered and found a dead man lying on the kitchen floor. While the officers were in the apartment, the telephone rang. Detective Ayala answered and identified himself merely as a friend of Carlos. He told the female caller, later identified as defendant, that he was concerned that the police would enter and discover something incriminating. The woman mentioned certain things in the closet which should be gotten rid of but when asked if there were any large amounts that might be found, she revealed that she had that with her. Defendant then indicated her location and the detective told her to wait there for him. Detective Ayala remained in the apartment while two other officers proceeded to the location which defendant had specified. At that location, they encountered defendant who revealed that she lived in the apartment to which the police had first responded. In response to their query regarding the shooting, defendant explained that at that time, while walking out of the bathroom of her apartment, she had observed her husband standing in the hallway with a tall, curly haired male with a gun. She went back into the bathroom, heard some shots and then immediately fled. She denied having telephoned her apartment since she fled. One of the officers then telephoned Detective Ayala at defendant's apartment and asked him to speak with defendant and her female friend. Detective Ayala identified defendant's voice as that of the woman with whom he had recently spoken. Ayala then proceeded to the second apartment and the police conducted a search thereof with the consent of the tenant, defendant's friend. As a result of the search, the police discovered the metal cannister containing the cocaine. ¶ Prior to hearing the testimony of the defense witnesses, the trial court was first informed that defense counsel also represented defendant's ex-husband[*] on a weapons possession charge emanating from the search of defendant's apartment on the date of this incident. Although the court was concerned about the impropriety of such dual representation, defense counsel repeatedly assured it that there was absolutely no conflict of interests inasmuch as defendant and her ex-husband were not codefendants, they both knew of and consented to the dual representation and Justices who had heard prior aspects of the cases had been

---

* They were divorced at the time of trial.

informed of the situation. Moreover, the ex-husband had hired this counsel only after counsel had been retained to represent defendant with respect to the instant charge. Defendant revealed that her uncle had obtained this counsel for her through a recommendation of some acquaintances. She stated that counsel had pointed out to her the potential conflict in his dual representation but that she still wanted him to represent her. ¶ The court, as the trier of fact, adjudged defendant guilty as charged. A conference was thereafter called in chambers in order to discuss the perceived inconsistencies in this case. Subsequent to the conference, the court, *sua sponte,* set aside the verdict on the ground that the conflict of interest had deprived defendant of the effective assistance of counsel. ¶ The Court of Appeals has recognized the competing considerations implicit in a conflict of interest problem of this nature. ¶ "The right of an accused in a criminal proceeding to the assistance of counsel is guaranteed by the Federal and State Constitutions, as well as by State statute * * * This constitutional right may be substantially impaired if one lawyer simultaneously represents the conflicting interest of a number of defendants * * * However, the joint representation of defendants is not per se a denial of the effective assistance of counsel * * * A conflict exists only when the individual defenses 'run afoul of each other' * * * Yet, once a conflict is clearly established, the courts will not enter into 'nice calculations' as to the amount of prejudice resulting from the conflict * * * ¶ "On the other hand, an important concomitant of the right to counsel is the obligation of the courts to respect a selection of counsel made by the defendant and such choice should not be lightly interfered with" (*People v Gomberg,* 38 NY2d.307, 312). ¶ The Court of Appeals warned trial courts against probing too deeply into the existence of a conflict prior to trial and thereby effecting an undue intrusion into the confidential relationship between attorney and client (*People v Gomberg, supra,* pp 313-314). ¶ There has been no showing in the instant case of how the individual defenses of defendant and her ex-husband could "run afoul of each other". The potential conflict feared by the trial court was purely speculative. Inasmuch as the parties were divorced by the time of defendant's trial and as the charges against them arose from separate indictments and represent separate and distinct crimes, we perceive of no conflict of interest inherent in the fact of the dual representation. Particularly significant are the facts that defendant, whose competence is not suspect, was fully apprised of the situation yet chose to retain her choice of counsel and that the dual representation was revealed to the Justices who heard prior aspects of the cases. Moreover, the People have apprised this court of the fact that the case against defendant's ex-husband was dismissed by the People on March 28, 1983. ¶ Accordingly, the trial court erred in setting aside its own verdict. The verdict is reinstated and the matter is remitted to the Supreme Court, Queens County, for sentencing. Mollen, P. J., Titone, O'Connor and Weinstein, JJ., concur.

